THE STATE, EX REL. AMERICAN LA FRANCE FIRE EN-
GINE COMPANY, RELATOR, v. ARTHUR B. SEYMOUR,
MAYOR OF THE CITY OF ORANGE, RESPONDENT.

Argued June 1, 1909—Decided November 16, 1909.

1. The payment of a bill against the city having been ordered by the
common council of the city of Orange, which has control of the
city's finances, and the bill having been presented to the mayor
for his approval, and after his disapproval, having been again,
after investigation, ordered paid by a requisite majority of coun-
cil, the mayor, his signature being essential, has no election but
to sign the necessary warrant, and upon his refusal, a writ of
*mandamus* will issue.

2. On application for a *mandamus*, where both parties have been
heard, and there is no dispute about the facts, and the law is
with the applicant, a peremptory writ of *mandamus* may be
granted in the first instance.

On rule to show cause why a writ of *mandamus* should not
issue.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the relator, *McCarter & English.*

For the respondent, *William A. Lord.*

The opinion of the court was delivered by

TRENCHARD, J. This is a rule to show cause why a writ of
*mandamus* should not issue.

The state of the case exhibits the facts following:

The relator is a corporation engaged in the business of
manufacturing apparatus for extinguishing fires.

On July 15th, 1907, the common council of the city of
Orange, by resolution, after having called for bids, awarded
a contract to the relator for a hook and ladder truck. Upon
the resolution being submitted to the mayor he vetoed it.
Thereupon council, by a two-thirds vote of all its members,
passed the resolution over his veto. Following this the relator

was notified by council of its action, and immediately entered upon the construction of the truck, and on December 25th, 1907, delivered the same to the city within the time limited by the specifications. On March 9th, 1908, the common council, having found the truck to be satisfactory, by resolution, ordered paid the bill of relator for $4,000, the agreed price thereof. Thereupon 'the check and voucher therefor, properly audited and approved by the proper city officers, were presented to the mayor for his approval and signature, but they were returned unsigned by the mayor, who gave as his reasons that the truck failed to comply with the specification in certain particulars which he specified. Upon receipt thereof, council appointed a committee to investigate and report. Upon such investigation, after taking testimony, the committee found that the truck did not vary in any material respects from the specifications, and that such variance, as appeared, was to the advantage of the city, and so reported to council and recommended that the bill be paid. Accordingly, council, on May 18th, 1908, passed a resolution, by a majority vote of all its members, that the bill be paid, the mayor's disapproval to the contrary notwithstanding. Immediately following the passage of this last resolution the check and voucher were again presented to the mayor and his approval and signature was again refused.

The Chief Justice of this court then allowed the relator a rule to show cause why a *mandamus* should not issue directing Mr. Shoenthal, at that time the mayor, to sign the necessary warrant for the payment of the money. Meanwhile, and on January 1st, 1909, the term of Mr. Shoenthal, as mayor, expired, and Arthur B. Seymour, the respondent here, qualified as mayor. Following this, the check and voucher which had been ordered paid by council, were presented to Mayor Seymour for his signature and approval, and the same was refused by him.

By consent of counsel, the Chief Justice signed an order substituting Mr. Seymour as mayor in the place of Mr. Shoenthal, and the proceedings are accordingly before this court with Mayor Seymour as respondent.

Ever since December 25th, 1907, the date of the acceptance of the truck by the city authorities, the city of Orange has been, and still is, using the truck, although no part of the contract price thereof has been paid to the relator.

We think the relator is entitled to his writ.

The preliminary steps, namely—*first,* the resolution awarding the contract; *second,* a veto by the mayor, and *third,* the passage of the resolution over the veto, seem to have been in accordance with the charter provisions.

The charter of the city of Orange (*Pamph. L.* 1869, p. 182), by section 93, permits a contract of this character to be awarded either by ordinance or resolution, and by section 14 it becomes effectual by passage by a two-thirds vote of the whole membership of council after veto by the mayor.

The city having accepted the truck, it remains to consider the final stages of the controversy, namely—*first,* the passage of the resolution ordering payment of the bill; *second,* the veto by the mayor; *third,* the passage of the resolution over the veto, and *fourth,* the subsequent refusal of the mayor to sign the warrant.

By section 15 of the charter the control of the city's finances is vested in common council. By section 25 the collector of taxes is made the disbursing officer. Section 13 renders the signature of the mayor essential to the validity of a warrant for the payment of moneys.

By an act entitled "An act regulating the receipt and disbursement of money and the passage of ordinances pertaining thereto in any city of this state," approved March 28th, 1904 (*Pamph. L., p.* 259), it is provided by section 2 that all moneys expended shall be by warrant. By section 4, that no warrant for the payment of money shall be delivered by an officer of any such city to any person, firm or corporation, until the bill or claim intended to be paid thereby shall have been presented to the mayor for his approval. By section 5 it is provided that it shall be the duty of the mayor, within ten days from the receipt of the bill or claim, if approved by him, to deliver the same to the auditor, comptroller or other person entitled thereto, with such form of approval as may be

prescribed; and if disapproved by him to deliver the same, with reasons for his disapproval, to the proper officer. Section 7 provides that the body or board presenting any claim or bill to the mayor for approval shall have power, by a majority vote of all its members, to order the bill so disapproved to be nevertheless paid, and in that case warrants shall be drawn for the same, and such warrants shall then be effective and be signed by the proper officers.

As we have seen, the bill in question was presented to the mayor for his approval; after disapproval, with reasons therefor, it was returned to common council by the mayor, and after investigation, was again ordered paid by a vote of the requisite number of the members of council.

The situation therefore presents a proper case for a *mandamus. Ahrens* v. *Fiedler,* 14 *Vroom* 400.

As was pointed out in that case, the application is not to compel the city to pay the relator. The common council, by passing the resolution over the mayor's veto, has already determined that the relator should be paid. The case, then, is not within the rule that *mandamus* is not the proper remedy to enforce the payment of moneys due from a municipal corporation for work and labor as applied in *State, ex rel. Little,* v. *Township Committee,* 8 *Vroom* 84. The sole questions are, whether it is the mayor's duty to append his signature to the warrant, and whether, he refusing, this court will compel him to perform his duty. We think it is his duty. The alleged departures from the specifications are, at most, trivial. The common council, following the report of its committee, after investigation, accepted the truck, and notwithstanding the objections of the mayor and his disapproval, ordered the bill paid. To permit the respondent to again interpose the same objections, would, as was said by Mr. Justice Magie in *Ahrens* v. *Fiedler, supra,* invest him with a power over the payment of bills not intended by the legislature. The city has received the benefit of the truck, and *ex aequo et bono,* ought to pay for it. The relator's right to compensation has been fixed by the act of the city authorities entrusted with the power and ultimate responsibility in disbursing moneys

of the city. Nothing is wanted but the mayor's signature which he refuses to give. For this the relator has no adequate remedy except by *mandamus*.

On application for a *mandamus*, where both parties have been heard, and there is no dispute about the facts, and the law is with the applicant, a peremptory writ of *mandamus* may be granted in the first instance. *State, ex rel. Kelly*, v. *Mayor, &c., of Paterson, 6 Vroom* 196.

The facts here are not in dispute. They have been agreed upon by counsel. The matter is before us on a rule to show cause and both parties have been heard.

A peremptory writ of *mandamus* should issue, with costs.